﻿Citation Nr: 18132496
Decision Date: 09/06/18 Archive Date: 09/06/18

DOCKET NO. 09-26 667
DATE: September 6, 2018
ORDER
Entitlement to service connection for a mycoplasma infection is denied.
Entitlement to service connection for chronic fatigue, post-exertional malaise, sleep problems, subjective cognitive impairment, and orthostatic-related symptoms manifested by postural dizziness, as due to an undiagnosed illness or a medically unexplained chronic multisymptom illness is granted.
Entitlement to an effective date earlier than January 8, 2008, for the grant of a 100 percent disability rating for posttraumatic stress disorder (PTSD) with depressive symptoms is denied.
Entitlement to a rating in excess of 50 percent for PTSD for the period prior to January 8, 2008, is denied.
FINDINGS OF FACT
1. The Veteran had service in the Southwest Asia Theater of operations during the Persian Gulf War.
2. The competent medical evidence of record reflects that the Veteran tested positive for a mycoplasma infection in 1999, but is against finding that the Veteran has, or has had at any time during the appeal, a current mycoplasma infection.
3. The probative evidence of record indicates that it is at least as likely as not that the Veteran has chronic fatigue, post-exertional malaise, sleep problems, subjective cognitive impairment, and orthostatic-related symptoms manifested by postural dizziness that are manifestations of an undiagnosed illness or a chronic multisymptom illness due to his Persian Gulf service.
4. A March 2002 rating decision denied the Veteran’s claim for entitlement to service connection for memory loss; the Veteran did not timely appeal the denial; and new and material evidence was not received as to the issue within the one-year appeal period following issuance of the March 2002 rating decision.
5. An August 2006 rating decision granted the Veteran entitlement to service connection for PTSD with depressive symptoms effective May 12, 2004, and assigned an initial rating of 30 percent for the disability; the Veteran submitted a timely notice of disagreement as to the initial rating assigned for the PTSD with depressive symptoms in the August 2006 rating decision and, in August 2007, a statement of the case was issued that granted the Veteran a rating of 50 percent from May 12, 2004; the Veteran did not submit a timely substantive appeal following issuance of the August 2007 statement of the case.
6. The earliest communication from the Veteran following the August 2007 statement of the case that may reasonably be construed as a formal or informal claim for an increased rating for the PTSD with depressive symptoms was received on January 8, 2008.
7. Based on the evidence of record, it is not factually ascertainable that an increase in disability occurred in the Veteran’s PTSD with depressive symptoms during the one-year period prior to the January 8, 2008, such that a rating in excess of 50 percent was warranted during that period.
CONCLUSIONS OF LAW
1. The criteria for entitlement to service connection for a mycoplasma infection have not been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317.
2. The criteria for presumptive service connection for an undiagnosed illness manifested by chronic fatigue, post-exertional malaise, sleep problems, subjective cognitive impairment, and orthostatic-related symptoms manifested by postural dizziness have been met. 38 U.S.C. §§ 1110, 1117, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.317.
3. The March 2002 rating decision is final. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 20.200, 20.201, 20.302, 20.1103.
4. The August 2006 rating decision is final. 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 20.200, 20.202, 20.302, 20.1103.
5. The criteria for entitlement to an effective date prior to January 8, 2008, for the grant of a 100 percent rating for PTSD with depressive symptoms have not been met. 38 U.S.C. §§ 5107, 5110; 38 C.F.R. §§ 3.102, 3.400, 4.130, Diagnostic Code 9411.
6. The criteria for entitlement to a rating in excess of 50 percent for PTSD with depressive symptoms for the period prior to January 8, 2008, have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.400, 4.3, 4.7, 4.14, 4.21, 4.130, Diagnostic Code 9411.
 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran had active service from March 1977 to February 1979 and from December 1990 to May 1991.
In April 2011, the Veteran testified at a hearing before a Veterans Law Judge who is no longer employed by the Board. In January 2018, the Veteran testified at a second hearing as to this appeal before the undersigned Veterans Law Judge via video conference. Transcripts for the hearings are associated with the record.
The Board remanded this case in October 2011. Relevant to the issues decided herein, the October 2011 Board remand directed the Agency of Original Jurisdiction (AOJ) to attempt to obtain any VA vocational rehabilitation training and education records pertaining to the Veteran, obtain the Veteran’s VA treatment records since July 2010, and then readjudicate the appeal. Pursuant to the October 2011 Board remand, the AOJ obtained updated VA treatment records and attempted to obtain the Veteran’s VA vocational rehabilitation file. However, the AOJ was informed that the Veteran’s vocational rehabilitation file could not be located and was not available. The AOJ notified the Veteran in a January 2016 letter that no vocational rehabilitation records could be located, and that the Veteran could submit any copies of such records in his possession, as well as any other relevant information. Accordingly, the Board finds that VA at least substantially complied with the October 2011 Board remand. See 38 U.S.C. § 5103A(b); Stegall v. West, 11 Vet. App. 268, 271 (1998); D’Aries v. Peake, 22 Vet. App. 97, 105 (2008).
In January 2011, the Veteran submitted a notice of disagreement as to the initial disability rating assigned in a November 2010 rating decision for his service-connected fibromyalgia. In a June 2012 rating decision, the Veteran was granted a higher initial rating of 40 percent for fibromyalgia, effective February 2, 2009, the date service connection was awarded for that disability. He was advised that this was the highest scheduler rating available for fibromyalgia and that this was considered a full grant of the benefit sought on appeal. There is no schedular rating higher than 40 percent available for fibromyalgia. See 38 C.F.R. § 4.71a, Diagnostic Code 5025. The Veteran has not indicated that he desires to continue his disagreement with the assigned rating, and the Board will not further address this matter. See also AB v. Brown, 6 Vet. App. 35, 38-39 (1993) (receipt of the maximum possible rating abrogates the pending appeal for a higher rating for the service-connected disability).
The Veteran perfected an appeal to the Board of the issue of entitlement to a rating in excess of 50 percent for PTSD with depressive disorder, which the Board remanded in October 2011. In a January 2015 rating decision, the AOJ increased the Veteran’s rating for PTSD with depressive disorder to 100 percent from January 8, 2008, the date the Veteran’s claim for an increased rating was received. Although a 100 percent rating is the highest available for that disability, because the Veteran’s claim for an increased rating was received on January 8, 2008, the relevant period for consideration in his appeal for a higher rating is from January 8, 2007, one year prior to the date of receipt of the Veteran’s claim for an increased rating. 38 C.F.R. § 3.400(o)(2). Accordingly, the January 2015 rating decision established staged ratings, and the issue of entitlement to a rating in excess of 50 percent for PTSD with depressive symptoms for the relevant period prior to January 8, 2008, remains on appeal. Hart v. Mansfield, 21 Vet. App. 505 (2007).
Neither the Veteran nor his representative has raised any other issues with regard to the duty to notify or duty to assist as they pertain to the issues decided herein. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that “the Board’s obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board.”); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).
The analysis in this decision focuses on the most relevant evidence and on what the evidence shows or does not show with respect to the issue decided herein. The Veteran should not assume that evidence that is not explicitly discussed herein has been overlooked. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (noting that the law requires only that reasons for rejecting evidence favorable to the claimant be addressed).
Service Connection
Generally, service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110, 1131; 38 C.F.R. § 3.303. To establish service connection for a disability, the Veteran must show: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred in or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).
1. Entitlement to service connection for a medically unexplained chronic multisymptom illness, to include as due to mycoplasma infection
The Veteran initially submitted a claim in October 2007 for entitlement to service connection for “fatigue due to mycoplasma”. However, in a statement received in January 2008, he clarified that he was seeking entitlement to service connection for an undiagnosed Gulf War illness. He contends that he was part of a 1999 VA clinical study seeking to treat mycoplasma infections as a way to treat unexplained illnesses in Gulf War veterans, that he tested positive during the study for a mycoplasma infection, that the mycoplasma infection was related to his service in the Persian Gulf, and that the mycoplasma infection was the cause of his various symptoms, to include fatigue and polyarthralgia.
Under 38 C.F.R. § 3.317, VA will pay compensation to a Persian Gulf veteran for disability due to an undiagnosed illness or medically unexplained chronic multisymptom illness, provided that certain requirements are met. For purposes of 38 C.F.R. § 3.317, the term “Persian Gulf veteran” means a veteran who served on active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War. 38 C.F.R. § 3.317(e)(1). The Southwest Asia theater of operations refers to Iraq, Kuwait, Saudi Arabia, the neutral zone between Iraq and Saudi Arabia, Bahrain, Qatar, the United Arab Emirates, Oman, the Gulf of Aden, the Gulf of Oman, the Persian Gulf, the Arabian Sea, the Red Sea, and the airspace above these locations. 38 C.F.R. § 3.317(e)(2).
For the purposes of 38 C.F.R. § 3.317(a)(1), signs or symptoms which may be manifestations of undiagnosed illness or medically unexplained chronic multisymptom illness include, but are not limited to fatigue, sleep disturbance, and neurological and neuropsychological signs or symptoms. 38 C.F.R. § 3.317(b).
Initially, the Board finds that the Veteran is a Persian Gulf veteran for purposes of 38 C.F.R. § 3.317 because his service records show that he served in the Southwest Asia theater of operations during his second period of active service in 1990 and 1991. Therefore, the presumptive service connection provisions of 38 C.F.R. § 3.317 are for application in the Veteran’s case.
With regard to the Veteran’s claim for entitlement to service connection for a mycoplasma infection, the Board acknowledges that the record confirms the Veteran’s account of having tested positive for multiple strains of mycoplasma during a 1999 VA study of Gulf War veterans. However, the Veteran’s VA treatment records refect that he was again tested or mycoplasma in May 2015 and was informed in June 2015 that all the tests came back negative. There are no test results or other medical evidence of record showing that the Veteran had a mycoplasma infection in proximity to the October 2007 claim or during the pendency of the claim. Thus, the Board concludes that the competent medical evidence of record does not show that the Veteran has a current diagnosis of mycoplasma infection or that he has had such a diagnosis at any time during the pendency of the claim or recent to the filing of the claim. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. § 3.303(a), (d); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Consequently, the criteria for entitlement to service connection for a mycoplasma infection have not been met, and any such claim must be denied.
With regard to the Veteran’s claim for entitlement to service connection for an undiagnosed Gulf War illness, O. Arreola-Owen, M.D., wrote in a June 2018 statement that, since at least December 2014, the Veteran had reported a history of chronic fatigue in addition to other symptoms that could not be completely accounted for by his service-connected fibromyalgia alone. Dr. Arreola-Owen opined that it is at least as likely as not that the Veteran’s chronic fatigue, post-exertional malaise, sleep problems, subjective cognitive impairment, and orthostatic-related symptoms manifested by postural dizziness are attributable to an illness related to Gulf War service. There are no probative opinions of record that weigh against the value of Dr. Arreola-Owen’s June 2018 statement. Therefore, based on Dr. Arreola-Owen’s statement, the Board concludes that the probative evidence of record indicates that it is at least as likely as not that the Veteran has chronic fatigue, post-exertional malaise, sleep problems, subjective cognitive impairment, and orthostatic-related symptoms manifested by postural dizziness that are manifestations of an undiagnosed illness or a chronic multisymptom illness due to his Persian Gulf service. As such, service connection is warranted for that disability. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).
Earlier Effective Date
The effective date of a rating and award of compensation based on a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. However, an increased rating may be awarded up to one year prior to receipt of the claim if the evidence shows an increase in disability was factually ascertainable during that period. 38 C.F.R. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2). For this purpose, the evidence must show that the increase in disability was sufficient to warrant a higher rating under the rating criteria. Hazan v. Gober, 10 Vet. App. 511, 519 (1992). Thus, determining the proper date for an increased rating requires (1) a determination of the date of the receipt of the claim for the increased rating and (2) a review of all the evidence of record since one year prior to the date of the claim to determine when an increase in disability was “factually ascertainable” in terms of meeting or approximating the criteria for a higher rating. See id. at 521.
38 U.S.C. § 5110(b)(2) and 38 C.F.R. § 3.400(o)(2) are applicable only where the increase precedes the claim, provided that the claim is received within one year after the increase. Harper v. Brown, 10 Vet. App. 125, 126-27 (1997). The phrase “otherwise, date of receipt of claim” provides the applicable effective date when a factually ascertainable increase occurred more than one year prior to receipt of the claim for increased compensation. Id.; see also VAOPGCPREC 12-98 at 2. Because neither 38 U.S.C. § 5110(b)(2) nor 38 C.F.R. § 3.400(o)(2) refer to the date of the claim as the effective date of an award of increased disability compensation, the effective date for increased disability compensation is the date on which the evidence establishes that a veteran’s disability increased, if the claim is received within one year from such date. In determining when an increase is “factually ascertainable,” VA should look to the record as a whole, including testimonial evidence and expert medical opinions, to determine when the increase took place. VAOPGCPREC 12-98 at 5.
2. Entitlement to an effective date earlier than January 8, 2008, for the grant of a 100 percent disability rating for PTSD with depressive symptoms
The Veteran contends that the effective date for the grant of a 100 percent rating for PTSD with depressive symptoms should be May 12, 2004, the date he submitted his claim for entitlement to service connection for PTSD. The Veteran’s representative has asserted that the Veteran did not timely appeal the initial rating for PTSD with depression assigned in an August 2007 statement of the case because he “was hospitalized for severe mental health complications which may have affected his thought processes.”
The Veteran submitted a claim for entitlement to service connection for, among other things, memory loss in December 2000. The Regional Office (RO) denied the Veteran’s claim in the March 2002 rating decision. The Veteran did not submit a timely notice of disagreement as to the March 2002 rating decision’s denial of service connection for memory loss. As such, the Veteran did not timely appeal the March 2002 rating decision’s denial of entitlement to service connection for memory loss, and the rating decision is final as to that issue. See 38 U.S.C. § 7105; 38 C.F.R. §§ 3.156, 20.201, 20.302, 20.1103.
On May 12, 2004, VA received the Veteran’s claim for entitlement to service connection for PTSD and depression. An October 2004 rating decision denied that claim, and the Veteran submitted a timely notice of disagreement as to the issue. In August 2006, the RO issued a rating decision granting entitlement to service connection for PTSD with depressive symptoms, effective May 12, 2004, and assigned an initial rating of 30 percent for the disability. The Veteran submitted a timely notice of disability as to the initial rating assigned in the August 2006 rating decision and, in an August 2007 statement of the case, the RO granted a higher initial rating of 50 percent for the PTSD with depressive symptoms from May 12, 2004. The Veteran did not submit a timely substantive appeal following issuance of the August 2007 statement of the case. Therefore, that decision became final. See 38 U.S.C. § 7105; 38 C.F.R. §§ 3.156, 20.202, 20.302, 20.1103.
The earliest communication received from the Veteran following issuance of the August 2007 service connection that may reasonably be construed as a formal or informal claim for an increased rating for the PTSD with depressive symptoms was received on January 8, 2008.
To the extent that the Veteran and his representative assert that the Veteran is entitled to an effective date based on his earlier claims for service connection, the Board reiterates that the claims were decided by the RO in the March 2002 rating decision and the August 2007 statement of the case. The Veteran did not complete an appeal to the Board of those decisions, and there has been no adjudicatory finding of clear and unmistakable error (CUE) in those decisions or the August 2006 rating decision. Therefore, they are final. 38 U.S.C. § 7105; 38 C.F.R. §§ 20.200, 20.302, 20.1103. As such, the earlier claims may not serve as a basis for an earlier effective date. Furthermore, there is no basis in VA law for a freestanding claim for an earlier effective date for matters addressed in a final decision. Rather, when a decision is final, only a request for a revision premised on CUE could result in the assignment of an earlier effective date. See Rudd v. Nicholson, 20 Vet. App. 296 (2006). Consequently, the Board concludes that any attempt to overcome the finality of the March 2002, August 2006, and August 2007 decisions by raising a freestanding claim for entitlement to an earlier effective date in conjunction with the present claim must fail. The Board’s finding in this regard does not prejudice any future adjudication of a claim of CUE in the prior decisions that may be raised in the future.
To the extent that the Veteran’s representative has argued that the Veteran is entitled to equitable tolling and that his statements in January 2008 should be accepted as a timely substantive appeal as to the August 2007 statement of the case, the Board acknowledges that mental illness may meet the requirements for equitable tolling. See Barrett v. Principi, 363 F.3d 1316, 1321 (Fed. Cir. 2004) (“[T]o obtain the benefit of equitable tolling, a veteran must show that the failure to file was the direct result of a mental illness that rendered him incapable of rational thought or deliberate decision making ... or incapable of handling his own affairs or unable to function in society.”) (internal citations omitted). However, in this case, the record does not support the representative’s contention that the Veteran was hospitalized for severe mental health complications during the period for appealing the August 2007 statement of the case. Rather, the record shows that the Veteran was hospitalized for PTSD for approximately one month beginning on March 24, 2008, which is well after expiration of the 60-day appeal period following issuance of the August 2007 and after the Veteran submitted his claim for an increased rating for PTSD with depressive symptoms in January 2008. 
The record also does not show any exacerbations in the Veteran’s PTSD with depressive symptoms during that 60-day period that would prevent him from timely filing a substantive appeal. A December 2007 VA treatment note reflects that the Veteran reported an increase in anxiety levels due to financial struggles surrounding a job loss in April 2007 and an impending loss of his house, and that he was seeking consultation for an inpatient PTSD program. However, there is no indication that the Veteran had been scheduled to enter an inpatient PTSD program at that time. On mental status examination, he was alert, oriented, and attentive, but looked mildly to moderately depressed. He had mild retardation of facial expression, eye movement, and motor activity. He made good eye contact, and had affective reactivity. His speech was normal in tone and rate, and he had good volition and organizational skills. He had no impairment of thought process or communication. He denied suicidal ideation and homicidal ideation and had no psychosis. His cognition, insight, and judgment were adequate, and he was of a low risk of harm to himself or anyone else. The December 2007 treatment note and other evidence of record does not show that, due to mental illness, the Veteran was not capable of rational thought, deliberate decision making, handling his own affairs, or functioning in society during the 60-day appeal period following issuance of the August 2007 statement of the case. As such, equitable tolling of the of that 60-day time limit is not available, and the Board finds that the Veteran’s January 2008 statement does not constitute a timely substantive appeal as to the August 2007 statement of the case.
As such, the earliest effective date available for the award of the 100 percent disability rating for PTSD with depressive symptoms is January 8, 2007, one year prior to receipt of the Veteran’s claim for an increased rating. See 38 C.F.R. § 3.400(o)(2). For an effective date during the one-year period preceding receipt of the increased rating claim to be awarded, it must be shown that an increase in severity was factually ascertainable during that period. See id. The issue of entitlement to a rating in excess of 50 percent for the period prior to January 8, 2008, to include the issue of whether a 100 percent rating was warranted during that period, will be addressed below.
Increased Rating
Disability ratings are determined by the application of VA’s Schedule for Rating Disabilities (Schedule), which is based on the average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. Part 4. Pertinent regulations do not require that all cases show all findings specified by the Schedule, but that findings sufficient to identify the disease and the resulting disability and, above all, coordination of the rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21; see also Mauerhan v. Principi, 16 Vet. App. 436 (2002).
When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.
The Board will consider whether separate ratings may be assigned for separate periods of time based on facts found, a practice known as “staged ratings,” in all claims for increased ratings. Hart v. Mansfield, 21 Vet. App. 505, 519 (2007).
3. Entitlement to a rating in excess of 50 percent for PTSD with depressive symptoms for the relevant period prior to January 8, 2008
The Veteran’s PTSD with depressive symptoms is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411, and the General Rating Formula for Mental Disorders. Relevant to the issue on appeal, under the General Rating Formula for Mental Disorders, a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships.
A 70 percent rating is assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.
A maximum 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation or own name.
The VA General Rating Formula for Mental Disorders is meant to provide a regulatory framework for placing veterans on a disability spectrum based upon their objectively observable symptoms. Vasquez-Claudio v. Shinseki, 713 F.3d 112, 117 (Fed. Cir. 2013). Symptomatology should be the fact finder’s primary focus when deciding entitlement to a given disability rating, and a veteran may only qualify for a given disability rating under 38 C.F.R. § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration. Id. The psychiatric symptoms listed in the above rating criteria are not exhaustive. Rather, they are examples of typical symptoms for the listed percentage ratings. Mauerhan, 16 Vet. App. 436. Accordingly, consideration will be given to all symptoms of the Veteran’s service-connected psychiatric disabilities that affect his level of occupational and social impairment.
Turning to the relevant evidence of record, in June 2007, the Veteran was seen at a VA facility after being laid off from his job. He was seeking employment at that time, but reported that he was still having problems with sleep. On mental status examination, he was alert, oriented, and attentive, and he made good eye contact, but his mood appeared “a little bit depressed.” He had adequate spontaneous motor movement. His speech was normal in tone and rate, and he showed no impairment of thought process or communicating. He denied suicidal ideation and had no psychosis. His cognition, insight, and judgment were intact, and he was of a low risk of harm to himself or anyone else.
The Veteran’s Social Security Administration records contain a summary of a telephonic conversation conducted with the Veteran in July 2007. According to that summary, the Veteran reported that he had anxiety, depression, and sleep disturbances despite taking Zoloft. He also reported losing more than one job due to his anger. He denied suicidal thoughts, but endorsed deep crying weekly and social isolation. He stated that he was previously very sociable, but no longer wanted to be around others. He would become very verbally aggressive with his family and would slam doors, but was not physically abusive. He would become angry at least once a week when he became overwhelmed. He missed taking his medications due to forgetfulness or due to being depressed and had to look at a calendar to keep current with days, dates, and appointments. He would forget conversations and could only sleep with medications. He had nightmares and flashbacks when he did not take his sleep medications. He would force himself to help with cooking, vacuuming, and sweeping, and would have difficulty staying focused on things. His day-to-day activities involved showering, dressing himself, eating, and taking his dog to the park. He would go with his wife grocery shopping every two to three weeks, but did not like being around groups of people. He did not go for long walks and would doze off during the day. He last worked from November 2006 to April 2007, when he was laid off. He was not able to function well at work and felt that he could not work to the best of his ability. He was confrontational at work, and could not make peace with his life. He believed that his employer came up with excuses to let him go. In August 2007, a Social Security Administration psychiatric consultant opined that the Veteran’s psychiatric symptoms would cause mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace, and would not cause episodes of decompensation of extended duration.
VA treatment notes dated in December 2007 indicated that the Veteran had suffered “a considerable decrement in his self-esteem” due to being out of work for several months despite continuing to look for work. He also had an increased level of anxiety due to financial struggles surrounding his job loss in April and an impending loss of his house. He felt that his service-connected psychiatric disability was causing difficulty with keeping jobs. He reported “sleeping a lot” to avoid his current situation. On mental status examination, he was alert, oriented, and attentive, but looked mildly to moderately depressed. He had mild retardation of facial expression, eye movement, and motor activity. He made good eye contact, and had affective reactivity. His speech was normal in tone and rate, and he had good volition and organizational skills. He had no impairment of thought process or communication. He denied suicidal ideation and homicidal ideation and had no psychosis. His cognition, insight, and judgment were adequate, and he was of a low risk of harm to himself or anyone else. 
After considering the evidence of record under the laws and regulations set forth above, the Board finds that, throughout the relevant period prior to January 8, 2008, the Veteran’s PTSD with depressive symptoms manifestations were, at worst, no more severe than productive of functional impairment comparable to occupational and social impairment with reduced reliability and productivity and that the record does not show that it was factually ascertainable during that period that the Veteran’s PTSD with depressive symptoms were of a severity warranting a rating in excess of 50 percent. For example, the record shows that, during the one-year period prior to January 8, 2008, the Veteran had depressed mood in the context of having lost his job in April 2007. He also reported that his anger caused difficulties with his family and with keeping a job. He further endorsed symptoms of anxiety, forgetfulness, nightmares, flashbacks, and a dislike for being around groups of people. He had mild motor retardation in December 2007. However, mental status examinations revealed him to be alert and oriented with normal speech, thought process, and thought content. He maintained relationships with his wife and children throughout that period, although those relationships were adversely affected by the Veteran’s anger and outbursts. He interacted well with treatment providers, did not endorse suicidal ideation to any treatment providers, and had intact judgment and insight at all times. He did not have delusions or hallucinations. The Board concludes that the Veteran’s psychiatric symptomatology shown in the records dating during the one-year period prior to January 8, 2008, most closely corresponds to the criteria for a 50 percent rating under 38 C.F.R. § 4.130, Diagnostic Code 9411, or occupational and social impairment with reduced reliability and productivity.
The Board further finds that the Veteran was not entitled to a 70 percent rating for PTSD with depressive symptoms at any time during the one-year period prior to January 8, 2008. The disability was not manifested during that period by symptoms productive of functional impairment comparable to occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood. The record shows that the disability caused difficulty in work, mood, and family. During that period, the Veteran presented with depressed mood and reported having anxiety, but he was able to perform activities of daily living and household chores, and he was able to accompany his wife to the grocery store every two to three weeks during that period. He endorsed impaired impulse control, such as unprovoked irritability, but the impaired impulse control did not result in periods of violence. He did not have suicidal ideation; obsessional rituals which interfered with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting his ability to function independently, appropriately and effectively; spatial disorientation; neglect of personal appearance and hygiene; or inability to establish and maintain effective relationships. His PTSD with depressive symptoms did not cause impairment in school, thinking, or judgment. In regard to judgment, the mental status examinations rate the Veteran’s judgment at least as adequate on all occasions. In terms of thinking, the mental status examinations reflect that the Veteran had normal thought process and content on all occasions. The Veteran did not have any other symptoms comparable in severity, frequency, and duration to those specifically listed in the 70 percent rating criteria.
The Board also finds that the Veteran was not entitled to a 100 percent rating for PTSD with depressive symptoms at any time during the one-year period prior to January 8, 2008. The Veteran’s service-connected acquired psychiatric disability did not manifest in symptoms productive of functional impairment comparable to total occupational and social impairment. The evidence does not demonstrate functional impairment comparable to gross impairment in thought processes or communication; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); or disorientation to time or place. Rather, the Veteran exhibited normal thought process at all times during the period at issue. He was cooperative with healthcare providers and maintained relationships with his wife and children during that period. His forgetfulness and problems with memory loss were akin to, at most, “impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks)”, as listed under the 50 percent rating criteria. They were not comparable to “memory loss for names of close relatives, own occupation, or own name”, as listed under the 100 percent rating criteria. In short, the Veteran did not show symptoms productive of impairment comparable to total occupational and social impairment during that period. Therefore, the Veteran’s PTSD with depressive symptoms did not more closely approximate the severity, frequency, and duration contemplated by the criteria for a 100 percent rating during the one-year period prior to January 8, 2008, and a rating in excess of 50 percent was not warranted during that period. See 38 C.F.R. § 4.7.
The Board recognizes that the Veteran has a limited work history and has not worked since April 2007. The fact that the Veteran’s PTSD with depressive symptoms results in occupational impairment has been considered by the Board. Such impairment is explicitly contemplated by the schedular criteria. That the Veteran was not working during a portion of the period at issue does not by itself define his level of impairment, and does not by itself demonstrate that a rating in excess of 50 percent was warranted. Specifically, it does not, in and of itself, demonstrate that the Veteran had occupational and social impairment in most areas, or that the Veteran had total occupational and social impairment. See 38 C.F.R. § 4.130, Diagnostic Code 9411. In the above discussion, the Board detailed the factors constituting the Veteran’s overall disability picture during the one-year period prior to January 8, 2008. The Board has coordinated the Veteran’s demonstrated level of impairment with the rating criteria. See 38 C.F.R. § 4.21; see also Mauerhan, 16 Vet. App. 436. Although the record shows that the Veteran has not worked since April 2007, it also shows that, overall, the Veteran’s psychiatric symptomatology did not more closely approximate the level of severity contemplated by the criteria for ratings in excess of 50 percent during the period at issue. Therefore, the Board finds that the Veteran was not entitled to a rating in excess of 50 percent for PTSD with depressive symptoms prior to January 8, 2008, despite the fact that he has not worked since April 2007.
In reaching its conclusion, the Board has considered a July 2008 psychiatric evaluation by D. Stevenson, Psy.D., who concluded that the Veteran would be unable to function in a normal work-like setting or to manage his own affairs without supervision. Dr. Stevenson based her conclusion on an interview and testing conducted in July 2008, which is after the one-year period prior to January 8, 2008. Thus, her conclusions do not indicate that it was factually ascertainable that the Veteran’s PTSD with depressive symptoms increased in severity during the one-year period prior to January 8, 2008, such that a rating in excess of 50 percent was warranted during that period.
The Board notes that the Veteran is competent to report symptoms of his service-connected PTSD with depressive symptoms, as doing so requires only personal knowledge. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). The Board has considered his reported symptoms. However, the Veteran is not competent to render an opinion as to the relative severity of his service-connected acquired psychiatric disability during the one-year period prior to January 8, 2008, as doing so requires specialized medical knowledge or expertise the Veteran has not been shown to possess. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (2006). The Board instead relies on the competent findings of record provided by medical professionals during the one-year period prior to January 8, 2008. The probative evidence does not support a finding that a rating in excess of 50 percent was warranted for the Veteran’s PTSD with depressive symptoms at any time during the one-year period prior to January 8, 2008.
Neither the Veteran nor his representative has raised any other issues with regard to the rating for the Veteran’s PTSD with depressive symptoms during the one-year period prior to January 8, 2008, nor have any other such issues been reasonably raised by the record. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016); Doucette v. Shulkin, 38 Vet. App. 366, 369-70 (2017). The Board notes that the General Rating Formula for Mental Disorders, refer to symptoms “such as” those specifically listed. Therefore, as it has done in this decision, the Board must address and consider symptoms other than those specifically listed in the rating criteria, as well as the overall level of impairment. See, e.g., Vazquez-Claudio, 713 F.3d at 118; Mauerhan, 16 Vet. App. at 442. Thus, with respect to any psychiatric symptom that is not specifically listed as an example in the rating criteria, the symptom is contemplated by the criteria, as the criteria expressly allows for consideration of symptoms other than those specifically listed. In this case, the rating criteria are adequate and contemplate the Veteran’s symptomatology related to his service-connected acquired psychiatric disability.
In light of the above, the Board finds that a rating in excess of 50 percent was not warranted for the Veteran’s PTSD with depressive symptoms at any time during the one-year period prior to January 8, 2008. As such, an effective date earlier than January 8, 2008, for the grant of a 100 percent disability rating for PTSD with depressive symptoms is also not warranted. Because the preponderance of the evidence is against the Veteran’s appeal, the benefit-of-the-doubt rule is not for application, and the appeal must be denied. 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. 55.
 
MICHAEL MARTIN
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD T. J. Anthony, Counsel